IRWIN M. ZALKIN, ESQ. (#89957)
DEVIN M. STOREY, ESQ. (#234271)
ALEXANDER S. ZALKIN, ESQ. (#280813)
RYAN M. COHEN, ESQ. (#261313)
The Zalkin Law Firm, P.C.
12555 High Bluff Drive, Suite 301
San Diego, CA 92130
Tel: 858-259-3011
Fax: 858-259-3015
Email: Irwin@zalkin.com
       dms@zalkin.com
       alex@zalkin.com
       ryan@zalkin.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAYLEY MOORE, an individual, | Case No.: |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| vs. | 1. **GENDER DISCRIMINATION, 20 U.S.C. § 1681** |
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA; and Does 2 through 100, inclusive, | |
| Defendants. | [DEMAND FOR JURY TRIAL] |
| | Date of Filing: December 17, 2015 |

1

**COMPLAINT**

## JURISDICTION AND VENUE

1. This civil action is based on "Gender Discrimination" under Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681) which raises a federal question arising under the Constitution and laws of the United States.

2. This court has original jurisdiction over this action under 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this district and/or all of the acts or omissions described in this Complaint occurred in this district.

## PARTIES

4. Plaintiff Hayley Moore ("Moore"), was at all times relevant, a student at the University of California, Santa Barbara ("UCSB").

5. Defendant The Regents of the University of California owns and operates UCSB.

6. Defendant Does 2-100, inclusive, are individuals and/or business or corporate entities incorporated in and/or doing business in California whose true names and capacities are presently unknown to Plaintiff who therefore sue such defendants by such fictitious names, and who will amend the Complaint to show the true names and capacities of each such Doe Defendant when ascertained. Each such Defendant Doe is legally responsible in some manner for the events, happenings and/or tortious and unlawful conduct that caused the injuries and damages alleged in this Complaint.

## BACKGROUND FACTS RELEVANT TO ALL COUNTS

7. The Trustees, by the California state constitution, are vested with the authority to supervise, control, and govern UCSB.

8. The Office of Civil Rights ("OCR"), a division of the United States Department of Education ("DOE"), is responsible for the implementation, interpretation, and enforcement of Title IX.

9. The OCR has promulgated numerous documents outlining the requirements for an

educational institution to be in compliance with Title IX, including the Dear Colleague Letter of April 4th, 2011 ("DCL"), which deals specifically with peer-on-peer sexual harassment and sexual assault.

10. The DOE was authorized by Congress to promulgate regulations to govern the implementation, interpretation and enforcement of Title IX.

11. The DCL is a "significant guidance document," intended to provide educational institutions with clarity as to the requirements they must follow in order to be in compliance with the DOE.

12. A failure to adhere to the requirements outlined in the DCL could result in the loss of federal funding for an educational institution.

13. In September of 2014, six then current and former students at UCSB filed a formal complaint with the OCR citing violations of Title IX in the way that UCSB responded to their complaints of sexual assault.

14. In April of 2015, a group of students, including at least three students who had been sexually assaulted on campus, staged a sit-in to protest UCSB's failure to adhere to both its own and the DOE's policies and procedures for responding to reports of sexual harassment and/or sexual assault. The students demanded that UCSB change its policies and procedures regarding responding to reports of sexual harassment and/or assault. After a meeting with UCSB's Chancellor Yang that lasted until 3:00am, UCSB pledged to revise its policies to be more equitable to the sexual assault survivor and account for the survivor's physical and mental safety and wellbeing.

**BACKGROUND FACTS SPECIFIC TO PLAINTIFF**

15. Moore enrolled at UCSB in August of 2014.

16. In October of 2014, Moore was sexually assaulted by another UCSB student, John Doe, at an apartment in the Isla Vista neighborhood of Santa Barbara.

17. Moore suspects that John Doe gave her a narcotic to render her unconscious, and then dragged her from the party to his apartment.

18. The next morning, Moore regained consciousness while on the side of a road in Isla

3

**COMPLAINT**

Vista.

19. Upon returning to her dorm room, Moore called her cousin to tell her about the sexual assault. Moore's cousin promptly called the police to report the sexual assault.

20. Mitch Molitor, a detective with the UCPD, arrived at Moore's dorm room shortly after the report and took Moore back to the police station where he took Moore's statement.

21. Upon returning to her dorm, Moore reported her assault to Tracy Mcalpin, her Residence Hall Advisor. Tracy, in turn, reported Moore's sexual assault to Morgan Vinson, the Assistant Resident Director. Mcalpin also called Emily Crutcher, a Campus Advocacy Resources & Education ("CARE") advocate, who came to Moore's dorm room to discuss what had happened.

22. The next day, Moore went to the UCSB counseling center. She was assigned to see an intern at the counseling center. The intern scheduled an appointment to meet with Moore seven to ten days later.

23. Upset at the way the counseling center was treating his daughter, Moore's father contacted Marisa Huston, the Assistant Coordinator of Student Mental Health services at UCSB. Mr. Moore told Huston that he would like his daughter to be seen by somebody with more experience and much sooner than the previously scheduled appointment.

24. Huston assured Mr. Moore that she would find a more qualified practitioner to meet with Moore and sooner than the scheduled date with the counseling center intern.

25. Huston scheduled a meeting with Moore two to three days after Mr. Moore's call with Huston. When Moore arrived to the meeting, Huston immediately informed Moore that Huston had another meeting and could only meet with Moore for ten minutes. Huston further informed Moore that Huston was not obligated to keep the contents of the meeting confidential.

26. At the meeting, Moore told Huston that she was having significant difficulty in her classes as a result of what had happened to her. Moore informed Huston that her human sexuality class was very triggering, and that she could not concentrate enough to do the necessary work for her statistics class.

27. Huston told Moore that Moore could work with Emily Crutcher, her CARE advocate to rearrange her class units. Moore told Huston that she was concerned about rearranging her units because she was receiving financial aid through FAFSA, and she was also concerned about her ability to remain living in the UCSB dormitories if she dropped below a certain number of units. Huston responded that both of those issues could be a problem for Moore. Huston then ended the meeting.

28. Three to four days after Moore's meeting with Huston, Moore received a phone call from Kirsten Olson, the Assistant Clinical Director and Crisis and Administrative Services Coordinator. Olson insisted that Moore meet with her, and they scheduled an appointment for a few days later.

29. At the meeting, Olson immediately began talking to Moore about grades. She asked Moore if Moore had considered withdrawing from UCSB. Moore informed Olson that she did not want to withdraw. Olson responded by questioning Moore's decision not to withdraw, and informed Moore that there were counseling measures Moore could engage in during the time she was withdrawn from UCSB. Moore also requested assistance in setting up an appointment with a psychiatrist. Moore and Olson set up another time to meet at the conclusion of this meeting.

30. The next day, Moore called Olson to inform her that she needed to reschedule their upcoming appointment, as Moore had decided to go home for a few days. Olson responded that Moore would be missing a lot of class and raised the effect her decision to go home would have on Moore's grades. Nonetheless, they set up an alternate appointment.

31. A few days later, Moore had a phone call with Joe O'Brien, Assistant Dean and Director of Advising at UCSB, to discuss her concerns regarding her financial aid and ability to remain living in the UCSB dormitories. Moore's mother had already called O'Brien and told him what had happened to Moore. At the meeting, O'Brien confirmed that if Moore reduced her course load, she would be ineligible both for financial aid through FAFSA and to live in the UCSB dormitories.

32. O'Brien did mention that Moore could appeal to two separate offices to keep her financial aid and her ability to live in the UCSB dormitories.

33. In early November of 2014, Moore met again with Olson. At the meeting, Olson again told Moore that her grades would likely suffer if Moore decided to go home for any extended period of time. Moore also relayed to Olson her frustration with the way the police investigation into her assault was proceeding. Olson told Moore, "I think you need to realize the reality of the situation here. Girls come in here with bruises and bloody faces and even their cases don't get prosecuted."

34. Olson also informed Moore that the earliest date she could see the psychiatrist was December 6, 2014, approximately a month from the date of their meeting.

35. During this meeting, and later through e-mail communications, Moore told Olson that Moore was unhappy with the treatment she had been receiving from Olson, and wanted to be seen by Cali Lantrip, another counselor at the counseling center.

36. Olson informed Moore that she could not see Lantrip immediately, as Lantrip's schedule was backed up for months, and encouraged Moore to continue to be treated by Olson.

37. Moore then told her CARE advocate, Emily Crutcher, that Moore no longer wanted to be treated by Olson, and instead, wanted to be treated by Lantrip. Contrary to what Olson had told Moore, Crutcher was able to schedule Moore to see Lantrip within a few days.

38. Lantrip also ran the group counseling sessions for sexual assault survivors at UCSB. Moore expressed to Lantrip her desire to attend one of the group counseling sessions. Latrip told Moore that the group counseling sessions were full, but that she should shoot for attending a group session during the spring semester.

39. In January of 2015, Moore received a letter from UCSB informing her that she had been placed on academic probation due to her poor academic performance during her first semester at UCSB.

40. Frustrated by UCSB's actions and inactions in response to her complaint that she was sexually assaulted, Moore withdrew from UCSB in late January 2015, approximately

**COMPLAINT**

four months after Moore first reported her assault to UCSB.

41. At no time during the course of events alleged herein was Moore contacted by UCSB's Title IX coordinator regarding her report of sexual assault.

42. Plaintiff is informed, believes and on that basis alleges that UCSB's Title IX coordinator was never informed of Moore's report of sexual assault.

43. Plaintiff is informed, believes and on that basis alleges that UCSB did not take any action to investigate Moore's report of sexual assault by John Doe, another UCSB student.

44. Throughout this process, Moore expressed her desire to various administrators for some remedial action to be taken with regard to her report of sexual assault. In response, Moore was told that the school could conduct an investigation, but it would take a long time, be difficult emotionally, and distract Moore from her studies. Moore was also told that sexual assault investigations often come down to "he said, she said" and rarely resolve in favor of the victim. Finally, Moore was told that if she initiated a school investigation, it would likely interfere with, and possibly even sabotage, the criminal investigation of Moore's assault. Despite her initial desires to have her assault investigated, Moore eventually relented and indicated that she did not want an investigation, after she was heavily discouraged by UCSB administrators from pursuing an investigation.

45. At least one time during the course of the events alleged herein, Moore saw John Doe on campus. The sighting induced Moore to suffer a panic attack and she quickly left the area in which John Doe was present.

46. Defendant's and UCSB's actions and inactions in response to Moore's report of sexual assault subjected her to additional harassment and created a sexually hostile environment for Moore on campus.

47. The mere presence on campus, without any restrictions, of the student that sexually assaulted Moore made Moore vulnerable to additional harassment and further exposed her to a sexually hostile environment.

**COMPLAINT**

48. As a result of John Doe's unrestricted presence on campus, Moore was constantly fearful and anxious of encountering John Doe while on campus, or in other school related activities. This fear and anxiety caused Moore to avoid various parts of campus in which she thought John Doe may be present, as well as avoid all social activities on campus or sponsored by UCSB.

49. As a result of Defendant's and UCSB's actions and inactions in response to Moore's report of sexual assault, and as a result of Moore's fear and anxiety of encountering her assailant on campus, Moore was deprived of several educational opportunities and/or benefits, including but not limited to:

    A drop in her GPA;

    Withdrawal from several classes;

    Avoidance of social activities on campus, sponsored by, or related to UCSB;

    The need to seek multiple academic accommodations from UCSB;

    Eventual withdrawal from UCSB.

## **FIRST CAUSE OF ACTION**
## **DISCRIMINATION ON THE BASIS OF GENDER IN VIOLATION OF 20 U.S.C. § 1681**
## **(TITLE IX)**

50. Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

51. The acts, and failures to act, perpetrated against Plaintiff amounted to unlawful sexual harassment and discrimination on the basis of gender. One or more administrators or officials of UCSB, with authority to take corrective action on Plaintiff's behalf, had actual notice of said discrimination and failed to adequately respond, in violation of their own policies. Those failures amounted to deliberate indifference toward the unlawful sexual conduct that had occurred, was occurring, or was likely to occur.

52. Additionally, and/or in the alternative, Defendant Trustees failed to enact and/or disseminate and/or implement proper or adequate policies to discover, prohibit or remedy the kind of discrimination that Plaintiff suffered. This failure included, without limitation, non-existent or inadequate customs, policies or procedures for the

recognition, reporting, investigation and correction of unlawful discrimination. Those failures amounted to deliberate indifference toward the unlawful sexual conduct that had occurred, was occurring, or was likely to occur.

53. Defendant Trustees acted with deliberate indifference in deviating significantly from the standard of care outlined by the DOE in the Dear Colleague Letter of 2011.

54. As a result of Defendant Trustees' deliberate indifference, Plaintiff suffered loss of educational opportunities and/or benefits, has incurred and will continue to incur attorney fees and costs of litigation.

WHEREFORE, Plaintiff prays for damages; costs; interest, statutory/civil penalties according to law; attorneys' fees and costs of litigation, pursuant to 42 U.S.C. § 1988 or other applicable law, and such other relief as the court deems appropriate and just.

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Date: December 17, 2015                         Respectfully submitted,

                                                THE ZALKIN LAW FIRM, P.C.
                                                IRWIN M. ZALKIN
                                                DEVIN M. STOREY
                                                ALEXANDER S. ZALKIN
                                                RYAN M. COHEN


                                        By:     /s/ Alexander S. Zalkin
                                                Alexander S. Zalkin

                                                Attorneys for Plaintiff

**COMPLAINT**