1   Jonathan D. Miller (Bar No. 220848)
    jonathan@nps-law.com
2   Alison M. Bernal (Bar No. 264629)
    alison@nps-law.com
3   NYE, PEABODY, STIRLING, HALE & MILLER, LLP
    33 West Mission Street, Suite 201
4   Santa Barbara, California 93101
    Telephone: (805) 963-2345
5   Facsimile: (805) 563-5385

6   Attorney for Defendant, REGENTS OF THE
    UNIVERSITY OF CALIFORNIA
7

8                        **UNITED STATES DISTRICT COURT**

9                **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10

11  | Hayley Moore, | CASE NO.:  3:15-CV-05779-RS |
    |---|---|
12  | Plaintiff, | **THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
13  | v. | |
14  | The Regents of the University of California; and Does 2 through 100, inclusive | |
15  | | *Filed Concurrently with Request for Judicial Notice and [Proposed] Order* |
16  | Defendants. | |
17  | | DATE: May 5, 2016 |
    | | TIME:   1:30 p.m. |
18  | | CTRM.: 3, 17th Floor |
19  | | TRIAL DATE:     None set |

20  **TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF**

21  **RECORD:**

22          PLEASE TAKE NOTICE that on May 5, 2016, at 1:30 p.m., before the

23  Honorable Richard Seeborg in Courtroom 3, 17th Floor, 450 Golden Gate Avenue,

24  San Francisco, California 94102, Defendant The Regents of the University of

25  California ("The Regents") will and hereby does move to dismiss all claims brought

26  against it in Plaintiff's First Amended Complaint, pursuant to Federal Rules of Civil

27  Procedure, Rule 12(b)(6).

28          ///

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

                                    i

1   The First Amended Complaint should be dismissed pursuant to Rule 12(b)(6)

2   because the sole cause of action for gender discrimination in violation of Title IX

3   fails to plead the requisite elements. Specifically, the Complaint fails to state facts

4   sufficient to support an inference the Regents acted with deliberate indifference to

5   Plaintiff's report of sexual assault, and fails to plead sufficient facts to find any

6   alleged deliberate indifference caused Plaintiff to undergo harassment so severe or

7   pervasive that it deprived her of educational opportunities. Further, to the extent the

8   claim is based on an alleged failure to comply with Title IX regulations, there is no

9   private right of action on such a claim.

10   This motion is based upon the Memorandum of Points and Authorities, all

11   pleadings on file with the Court, and such additional authority and argument as may

12   be presented in the Regents' reply and at any hearing on this motion.

13

14   Dated: March 4, 2016                    NYE, PEABODY, STIRLING, HALE &
                                             MILLER, LLP
15

16                                           By: ____/S/_____
17                                                Jonathan D. Miller, Esq.
                                                  Alison M. Bernal, Esq.
18                                                Attorney for Defendant, REGENTS OF
                                                  THE UNIVERSITY OF CALIFORNIA
19

20

21

22

23

24

25

26

27

28

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

ii

1

**TABLE OF CONTENTS**

2

Page

3 I.    INTRODUCTION ...................................................................... 1

4 II.   FACTUAL BACKGROUND ...................................................... 3

5      A.    University Policies on Sexual Assault ................................... 3

6      B.    The University's Response To Plaintiff's Reported Sexual
            Assault As Alleged By Plaintiff ............................................ 4

7
       C.    Procedural History ............................................................... 5
8
9 III.  ARGUMENT ............................................................................. 7

10     A.    Legal Standard ..................................................................... 7

11     B.    Plaintiff's Title IX Claim Fails As A Matter Of Law ........... 8

12           1.    There is no private right of action for regulatory
                  enforcement under Title IX .......................................... 9

13
             2.    Plaintiff has not alleged facts to show the Regents acted
14                with deliberate indifference which caused her to undergo
                  harassment in violation of Title IX ............................ 11
15                a.    The Regents did not act with deliberate indifference ...... 13

16 IV.  CONCLUSION ......................................................................... 16
17
18

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NOTICE OF MOTION AND MOTION TO DISMISS FIRST
AMENDED COMPLAINT                          Case No. 3:15-CV-05779-RS

**TABLE OF AUTHORITIES**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ........................................................7, 8

*Baynard v. Malone*, 268 F.3d 228, 236 (4th Cir.2001) ......................................13, 16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)........................................7

*Cannon v. University of Chicago*, 441 U.S. 677, 704 (1979)....................................11

*Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629, 643 (1999)..................................................................................*passim*

*Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998) ........................14

*Doe v. School Board of Broward County, Fla.* 604 F.3d 1248, 1259 (11th Cir. 2010)............................................................................................13

*Escue v. Northern Okla. College*, 450 F.3d 1146, 1155 (10th Cir. 2006)................13

*Garcia ex rel. Marin v. Clovis Unified Sch. Dist.*, 627 F.Supp.2d 1187, 1196 (E.D. Cal. 2009)..........................................................................13, 14

*Gebser v. Lago Vista Independent Institution District,* 524 U.S. 274, 290-292 (1998)......................................................................................1, 6, 9, 10

*Hill v. Cundiff*, 797 F.3d 948 (11th Cir. 2015 ...........................................................15

*Ileto v. Glock Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).................................7

*Karasek v. Regents of the Univ. of Calif.*, 2015 WL 8527338 at *10 (N.D. Cal. Dec. 11, 2015)...................................................................................10

*Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995)........................................8

*Oden v. N. Marianas Coll.*, 440 F.3d 1085 (9th Cir. 2006) ...........................2, 14, 16

*Papasan v. Allain*, 478 U.S. 265, 286 (1986)............................................................7

*Perez v. Mortgage Bankers Ass'n,* 135 S. Ct. 1199 (2015).......................................9

*Reese v. Jefferson Institution Dist. No. 14J*, 208 F.3d 736, 739 (9th Cir. 2000)...................................................................................................12

*Schaefer v. Las Cruces Public School District,* 716 F.Supp.2d 1052, 1081 (D. N. Mex. 2010)....................................................................................14

*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)...................................................7

*Williams v. Board of Regents of the Univ. System of Georgia*, 477 F.3d 1282, 1296 (11th Cir. 2007) ...................................................................15

*Williams v. Paint Valley Local Sch. Dist.*, 400 F.3d 360, 367 (6th Cir.

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

iv

2005) ........................................................................................13, 16

*Wills v. Brown Univ.*, 184 F.3d 20, 26 (1st Cir.1999) .........................................13, 16

**<u>Statutes</u>**

20 U.S.C. § 1681 ..............................................................................*passim*

F.R.C.P.12(b)(6) .............................................................................i, 5, 7

Nye, Peabody, Stirling, Hale & Miller
33 West Mission Street, Suite 201
Santa Barbara, California 93101

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

Case No. 3:15-CV-05779-RS

<strong><u>MEMORANDUM OF POINTS AND AUTHORITIES</u></strong>

## I.    <u>INTRODUCTION</u>

Plaintiff Hayley Moore filed this lawsuit against the Regents of the University of California ("the Regents" or "the University") alleging the University of California, Santa Barbara, improperly responded to her report of sexual assault in violation of Title IX, 20 U.S.C. § 1681. Title IX provides that "no person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination, under any education program." The Supreme Court has held a university may be liable for violation of Title IX in cases of student-on-student sexual harassment only in "limited circumstances." *Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629, 643 (1999). Here, even assuming every allegation in the First Amended Complaint is true, the allegations do not fit within the limited circumstances in which a university may be held liable for violation of Title IX.

As an initial matter, Plaintiff cannot base a Title IX claim on alleged violations of Department of Education regulatory and guidance materials, such as the Dear Colleague Letter. The Supreme Court has recognized there is no private right of action for regulatory enforcement, let alone failure to comply with guidance materials. *Gebser v. Lago Vista Independent Institution District,* 524 U.S. 274, 290-292 (1998). This is confirmed by the Department of Education, who has stated the Dear Colleague Letter and similar OCR guidance "does not have the force and effect of law." February 17, 2016, OCR Response Letter.[1] Plaintiff's allegations are in large part aimed at purported failures of the University to comply with OCR guidance on procedures for investigating sexual assault. Even if this were true, which it is not, it cannot support a finding of liability against the University.

To the extent Plaintiff's claims are solely based on a statutory violation of

---

[1] See RFJN, Ex. 2, p. 2.

1

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1   Title IX, she must prove: (1) the University exercised control over the harasser and

2   the context in which the harassment occurred; (2) Plaintiff suffered harassment so

3   severe and pervasive it deprived her of access to an educational opportunity; (3) the

4   University had knowledge of the harassment; (4) the University acted with

5   deliberate indifference to the harassment Plaintiff faced; and, (5) the deliberate

6   indifference caused Plaintiff to undergo harassment. *Davis, supra,* 526 U.S. at 645-

7   50. The allegations in the Complaint do not meet the fourth requirement.

8           The allegations show the Regents did not act with deliberate indifference.

9   Deliberate indifference is shown only where a response to harassment "is clearly

10  unreasonable in light of the known circumstances." *Id.* at 648. The University's

11  response was not clearly unreasonable. To the contrary, the allegations in the

12  Complaint show within one day of Plaintiff's report, a University police officer and

13  a Campus Advocacy Resources & Education ("CARE") advocate separately met

14  with Plaintiff. Within two days, Plaintiff had also met with a counselor provided by

15  the University. Within one week, Plaintiff met with another counselor, who referred

16  her to another CARE advocate. Within two weeks, Plaintiff met with the Assistant

17  Clinical Director and Crisis Administrative Services Coordinator, and shortly after

18  that, spoke with the Assistant Dean and Director of Advising, who advised Plaintiff

19  of the steps necessary to keep her financial aid and housing. Plaintiff then met with

20  another counselor, and continued to see her CARE advocate.

21          In total, the allegations in the Complaint span from October 2014 through

22  January 2015, a period of only three months from the reported assault. Courts have

23  held even a nine-month delay in conducting a Title IX investigation and hearing is

24  insufficient to show deliberate indifference. *Oden v. N. Marianas Coll.*, 440 F.3d

25  1085 (9th Cir. 2006). The three-month delay alleged in this case is likewise

26  insufficient, especially when considering both the resources provided to Plaintiff

27  and the fact Plaintiff filed a criminal complaint, which necessarily took precedence

28  over the University's investigation. In short, providing extensive counseling,

2

1   academic and housing resources, and helping with the criminal investigation is not

2   "clearly unreasonable in light of the known circumstances," and thus does not

3   demonstrate deliberate indifference.

4       A university's response to reported sexual assault is a major issue on college

5   campuses. But when a university has established procedures which conform to the

6   requirements of Title IX, and acts in accordance with those procedures in

7   responding to a survivor's report, it cannot be held liable under Title IX's deliberate

8   indifference standard. For these reasons, and as more fully explained below, the

9   Regents requests the Court grant its motion to dismiss.

10  ## II.    FACTUAL BACKGROUND

11      In ruling on a motion to dismiss, the Court must accept all facts alleged in the

12  Complaint as true, together with those facts which may be judicially noticed. Here,

13  the facts alleged cannot sustain a claim for violation of Title IX.[2]

14  ### A.    University Policies on Sexual Assault

15      The University has established policies on investigating and disciplining cases

16  of sexual assault.[3] These policies are publicly available on the University's website,

17  and provided to each student upon admission. As is relevant here, the policies

18  provide that when an assault is reported to the University, the University will

19  provide the survivor with extensive resources, including a CARE advocate to

20  provide confidential assistance to anyone who has experienced sexual assault.

21  (RFJN, Ex. 1, p. 3.) The advocate's assistance may include reporting the assault if

22  the survivor feels comfortable doing so, helping the survivor obtain a "no contact"

23  order, coordinating requests for academic or housing assistance, and general

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

---

[2] While the Regents dispute Plaintiff's version of facts set forth in the Complaint, they will be presumed as true solely for purposes of this motion.

[3] The Regents' policies in effect at the time of Plaintiff's assault, which have the force and effect of law, are submitted as Exhibit 1 to the concurrently-filed Request for Judicial Notice.

3

1   assistance throughout the process if the survivor chooses to report the assault to

2   either the University's Title IX office or the police. (*Id.*, p. 4.)

3         The policies also outline the options a survivor has when choosing whether to

4   report an assault. Those options include a report to law enforcement, a report to the

5   University's Title IX office, or both. (*Id.¸* p. 4.) The policies then set forth the

6   procedure the University will use when investigating and adjudicating a claim of

7   sexual assault reported to the Title IX office, including an impartial investigation

8   and ultimately a hearing where evidence is presented. (*Id.*, pp. 5-9.) The policies are

9   focused on providing the survivor with access to all available resources, while

10   accounting for the due process rights available to respondents.

**B.**     **The University's Response To Plaintiff's Reported Sexual Assault As Alleged By Plaintiff**

        Against the backdrop of the general policies at play are Plaintiff's allegations relating to her sexual assault. It is helpful to view the allegations in a timeline, as they show what occurred and when, as Plaintiff contends in her Complaint:

| Date | Event | Elapsed Days Since Assault |
|------|-------|----------------------------|
| Oct. 2014 | Assault (FAC, ¶ 44) | 0 |
| Next day | • Cousin reports to police (¶ 47)<br>• Police meet with Plaintiff, obtain statement (¶ 48)<br>• Plaintiff reports to Resident Advisor, who reports to Asst. Resident Director (¶ 49)<br>• Asst. Resident Director reports to CARE (¶ 49)<br>• CARE Advocate meets with Plaintiff (¶ 49) | 1 |
| Next day | Plaintiff meets with UCSB counselor (¶ 50) | 2 |
| 2-3 days later | Plaintiff meets with Assistant Coordinator of Student Mental Health, who informs Plaintiff she can work with CARE advocate to rearrange classes (¶ 53, 55) | 4-5 |
| 3-4 days later | Plaintiff meets with Asst. Clinical Director and Crisis and Administrative Services Coordinator (¶ 56) | 7-8 |

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | |
|---|---|---|
| "Few days later" | Plaintiff speaks with Assistant Dean & Director of Advising, who informs Plaintiff how to keep her financial aid and housing while dropping units (¶¶ 59-60) | Approx. 10-12 |
| Early Nov. 2014 | Plaintiff meets with Asst. Clinical Director and Crisis and Administrative Services Coordinator, and states she wants to see another counselor (¶¶ 61, 63) | Approx. 1 month |
| "Few days" later | Plaintiff meets with a different counselor (¶ 65) | Approx. 1 month |
| January 2015 | Plaintiff withdraws from UCSB (¶ 68) | Approx. 3 months |

This timeline highlights the deficiencies in Plaintiff's Complaint in two ways. First, it shows the numerous resources provided to Plaintiff in a relatively short amount of time. Providing these resources can hardly be viewed as being deliberately indifferent to the report of sexual assault. Second, the timeline shows several missing allegations. For instance, while Plaintiff alleges that at some point between October 2014 and January 2015, she purportedly saw John Doe on campus, there are no allegations to show she reported this incident to anyone. (FAC, ¶ 73.) The University cannot respond to harassment it does not know about. There are likewise no allegations to show Plaintiff ever reported the sexual assault to the Title IX office, but rather that she reported it to the police and was frustrated with the slow criminal investigation. (FAC, ¶ 61.) Finally, there are no allegations to show the University had any prior notice of inappropriate or criminal behavior on the part of John Doe.

## C.   **Procedural History**

Plaintiff filed her initial Complaint on December 17, 2015. (Dkt. # 1.) The Regents filed a motion to dismiss pursuant to FRCP, Rule 12(b)(6) on January 27, 2016. (Dkt. # 7.) The Regents' motion raised three arguments: (1) there is no private right of action for regulatory enforcement, i.e., Plaintiff cannot sue for alleged violations of Dear Colleague Letter and similar regulations, (2) the University did

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

5

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1    not act with deliberate indifference as the response was not clearly unreasonable

2    considering the circumstances, and, (3) any alleged deliberate indifference did not

3    cause Plaintiff to undergo harassment. The third point was highlighted by Plaintiff's

4    allegation in the Complaint that she dropped out of school not because of

5    harassment, but because of her frustration with the process. (*Id.*) In response,

6    Plaintiff filed a First Amended Complaint on February 10, 2016.

7         The First Amended Complaint adds several new paragraphs which discuss the

8    Dear Colleague Letter, and the April 2014 OCR "Questions and Answers on Title

9    IX and Sexual Violence" document. Plaintiff has also added allegations contending

10   the University updated its policies on sexual assault in January 2016 because its

11   prior policies did not conform to the "DCL requirements" set forth in the Dear

12   Colleague Letter. (FAC, ¶¶ 11-12, 14-30, 33-42, and 77.) Even if Plaintiff could

13   show the Regents was not in compliance with DOE policy as outlined in the OCR

14   letter, a "failure to comply with the [Department of Education's] regulations" does

15   not give rise to a claim for deliberate indifference. *Gebser*, 524 U.S. at 291-92.

16        The factual background relating to Plaintiff's assault and the University's

17   response is largely redundant with the exception of two phrases in paragraphs 68

18   and 73 which allege she resigned from UCSB not because of her frustration with the

19   process, as previously alleged, but because of "the ongoing hostile environment she

20   continued to experience in part due to her fear of encountering her assailant."

21        Even with these amendments, the First Amended Complaint suffers from two

22   fatal defects. First, the sole claim for violation of Title IX is premised on alleged

23   failures by the University to comply with Department of Education Regulations and

24   OCR guidance materials. These allegations, even if true, cannot support a private

25   right of action against the University because the regulations and guidance materials

26

27

28

6

1    "do not have the force and effect of law."[4] Second, the timeline of allegations in the

2    Complaint shows the University's response was not clearly unreasonable in light of

3    the circumstances. The Regents therefore requests this Court grant its motion to

4    dismiss the First Amended Complaint.

5    **III.    ARGUMENT**

6        **A.    Legal Standard**

7        A motion to dismiss under Federal Rule of Civil Procedure Rule 12(b)(6)

8    requires the Court to determine whether a cognizable claim has been pled in the

9    complaint. *Ileto v. Glock Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). While the

10   pleading requirement of Federal Rule of Civil Procedure Rule 8(a) requires "a short

11   and plain statement of the claim showing that the plaintiff is entitled to relief," it

12   does not unlock the doors of discovery for a plaintiff armed with nothing more than

13   conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

14       To survive a motion to dismiss, a complaint must plead sufficient factual

15   matter to "allow the court to draw the reasonable inference that the defendant is

16   liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. The emphasis is on

17   factual pleadings, as a pleading that offers "labels and conclusions," "a formulaic

18   recitation of the elements of a cause of action" or "naked assertions devoid of

19   further factual enhancement" will not suffice. *Id.*, citing and quoting *Bell Atl. Corp.*

20   *v. Twombly*, 550 U.S. 544, 555, 557 (2007). The court cannot accept as true a legal

21   conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286

22   (1986). Likewise, "the factual allegations that are taken as true must plausibly

23   suggest an entitlement to relief, such that it is not unfair to require the opposing

24   party to be subjected to the expense of discovery and continued litigation." *Starr v.*

25   *Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

26       The court may grant a motion to dismiss when the plaintiff's facts are facially

27   _____

28   [4] RFJN, Ex. 2, p. 2.

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

7

1   implausible in light of more likely explanations. *Ashcroft*, 556 U.S. at 681. If a

2   claim for relief cannot be cured by amendment, it should be dismissed without

3   affording leave to amend. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

4   **B.    Plaintiff's Title IX Claim Fails As A Matter Of Law**

5       Plaintiff's sole claim for relief is for violation of Title IX. Title IX states, in

6   pertinent part, that "[n]o person in the United States shall, on the basis of sex, be

7   excluded from participation in, be denied the benefits of, or be subjected to

8   discrimination under any education program or activity receiving Federal financial

9   assistance." 20 U.S.C. § 1681(a).

10      The Department of Education established guidelines to aid universities in

11  implementing the requirements of Title IX. The Department's guidelines explain

12  that "prompt and equitable resolution" includes: (1) notice to students of the

13  procedures; (2) an "adequate, reliable, and impartial investigation of complaints;"

14  (3) the "opportunity for both parties to present witnesses and other evidence;" and,

15  (4) prompt notice of the final outcome. U.S. Dep't of Education, Office for Civil

16  Rights, Revised Sexual Harassment Guidance: Harassment of Students by

17  Institution Employees, Other Students, or Third Parties – Title IX (2001) at 19-20,

18  21.

19      In addition to these guidelines, on April 4, 2011, the Department of

20  Education's Office of Civil Rights issued a "Dear Colleague" letter to institutions

21  subject to Title IX.  U.S. Dep't of Education, Office for Civil Rights, Dear

22  Colleague Letter: Sexual Violence, April 4, 2011. The Department identifies the

23  letter as a "significant guidance document," and provides examples of how

24  universities could appropriately respond to sexual assault allegations. The letter

25  provides, among other things, that "[i]f a student files a complaint with the

26  institution, regardless of where the conduct occurred, the institution must process

27  the complaint in accordance with its established procedures." *Id.* at 4.

28      There is a critical distinction between the statutory mandates of Title IX and

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

8

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

the regulatory guidelines of the OCR guidance. The Supreme Court has recognized there is no private right of action for regulatory enforcement; i.e., a plaintiff cannot sue for alleged failures to comply with OCR guidance. *Gebser, supra,* 524 U.S. at 290-292. Instead, a plaintiff seeking to hold an institution liable for sexual harassment and discrimination in violation of Title IX must prove five requirements: (1) the institution exercised substantial control over both the harasser and the context in which the harassment occurred; (2) the plaintiff suffered harassment that was so severe, pervasive, and objectively offensive that it deprived plaintiff of access to educational opportunities; (3) the institution must have had actual knowledge of the harassment; (4) the institution was deliberately indifferent to the sexual harassment and discrimination plaintiff faced; and, (5) the institution's deliberate indifference caused Plaintiff to undergo harassment. *Davis, supra,* 526 U.S. at 645-650.

Here, the Complaint fails in two respects. First, it seeks to assign liability to the Regents for purported violations of the OCR guidance materials, for which there is no private right of action. Second, to the extent the Complaint seeks only to hold the Regents liable for alleged discrimination in violation of Title IX, there are insufficient allegations to sustain a finding the Regents acted with deliberate indifference which caused Plaintiff to undergo harassment so severe it deprived her of an educational opportunity.

### 1. There is no private right of action for regulatory enforcement under Title IX

Title IX is a federal statute. It was passed following extensive notice and comment procedures. See Legislative History of 20 U.S.C. § 1681 (Pub. L. 99-514). By contrast, the Department of Education and its Office of Civil Rights ("OCR") issues its regulations and guidance materials, such as the Dear Colleague Letter, without any required notice and comment procedure. *Perez v. Mortgage Bankers Ass'n,* 135 S. Ct. 1199 (2015). The Assistant Secretary for Civil Rights from the

9

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1   Department of Education's OCR was specifically asked by Senator James Lankford,

2   Chairman of the Subcommittee on Regulatory Affairs and Federal Management,

3   what the legal effect was of the Dear Colleague Letter and similar OCR policy

4   guidance. Secretary Lhamon responded to Senator Lankford by stating the

5   Department of Education "does not view such guidance to have the force and effect

6   of law."[5]

7       The April 4, 2011 letter itself confirms this statement by Secretary Lhamon.

8   The Dear Colleague Letter expressly rules out any suggestion that its requirements

9   may be used to support a damages claim. See Office for Civil Rights, Dep't of

10  Education, Dear Colleague Letter: Sexual Violence (Apr. 4, 2011) (available at

11  http://www.ed.gov/ocr/letters/colleague-201104.pdf), at 4 & n. 12 (clarifying the

12  letter sets forth the "standard for administrative enforcement of Title IX and in court

13  cases where plaintiffs are seeking injunctive relief" and that this standard does not

14  apply to "private lawsuits for monetary damages").

15      Because the regulations and guidance issued by OCR do not have the force

16  and effect of law, the United State Supreme Court has made clear no private right of

17  action exists for regulatory enforcement under Title IX. *Gebser, supra,* 524 U.S. at

18  290-92 (While the Department of Education can enforce Title IX regulations

19  administratively, "[w]e have never held, however, that the implied private right of

20  action under Title IX allows recovery in damages for violation of those sorts of

21  administrative requirements."). See also, *Karasek v. Regents of the Univ. of Calif.*,

22  2015 WL 8527338 at *10 (N.D. Cal. Dec. 11, 2015) (rejecting Plaintiff's claims the

23  Regents could be liable for failure to conform to the Dear Colleague Letter).

24      The *Gebser* court was faced with an allegation similar to the one in the

25  present case, i.e. that the institution failed to enact proper procedures in

26  conformance with Title IX regulations and guidance. *Id.*, at 291-292; FAC at ¶ 81

27  ───────────────────

28  [5] RFJN, Ex. 2, p. 2.

("[The Regents] failed to enact and/or disseminate and/or implement proper or adequate policies to discover, prohibit or remedy the kind of discrimination that Plaintiff suffered… which amounted to deliberate indifference toward the unlawful sexual conduct that had occurred."). *Gebser* held an "alleged failure to comply with the regulations, however, does not establish the requisite actual notice and deliberate indifference. And in any event, the failure to promulgate a grievance procedure does not itself constitute 'discrimination' under Title IX." *Id*.

The First Amended Complaint contains several paragraphs of allegations alleging the Regents' policies and procedures at the time of Plaintiff's assault were inadequate and not in conformance with OCR guidance. See, e.g., FAC, ¶¶ 33-38. Plaintiff contends the Regents later updated their policies to conform to the purported "OCR mandate." FAC, ¶ 35. This is an inaccurate representation of the legal requirements. There is no OCR mandate. As the law makes clear, the OCR materials are guidance documents. Even if the Regents were not in conformance with these documents, which it disputes, it cannot be held civilly liable for this failure. Thus, to the extent Plaintiff's claim is based on a purported failure to comply with Title IX regulations or guidance or a failure to promulgate an appropriate policy or procedure, the claim must fail as Plaintiff has no private right of action for regulatory enforcement under Title IX.

**2.  Plaintiff has not alleged facts to show the Regents acted with deliberate indifference which caused her to undergo harassment in violation of Title IX**

Congress enacted Title IX in 1972 with two principal objectives in mind: "[T]o avoid the use of federal resources to support discriminatory practices" and "to provide individual citizens effective protection against those practices." *Cannon v. University of Chicago*, 441 U.S. 677, 704 (1979). In recent years, Title IX has been used as a basis for liability in cases of sexual assault occurring in the education setting. The Supreme Court first addressed Title IX claims in the context of teacher-on-student sexual harassment. In *Gebser, supra,* 524 U.S. at 277, the Court held

11

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

Nye, Peabody, Stirling, Hale & Miller
33 West Mission Street, Suite 201
Santa Barbara, California 93101

1  Title IX creates a private cause of action against funding recipients for teacher-on-

2  student sexual harassment when "an official of the school district who at a minimum

3  has authority to institute corrective measures on the district's behalf has actual

4  notice of, and is deliberately indifferent to, the teacher's misconduct." The Court

5  described the deliberate indifference standard as "an official decision by the

6  [funding] recipient not to remedy the violation." *Id*. at 290.

7       One year later, in *Davis, supra,* 526 U.S. at 633, the Supreme Court held Title

8  IX creates a private cause of action for student-on-student sexual harassment. A

9  Title IX funding recipient is liable for student-on-student harassment if it is

10  "deliberately indifferent to sexual harassment, of which [it] has actual knowledge,

11  that is so severe, pervasive, and objectively offensive that it can be said to deprive

12  the victims of access to the educational opportunities or benefits provided by the

13  school." *Id*. at 650.

14       The standard for student-on-student sexual harassment claims is far more

15  rigorous than a claim for teacher-on-student harassment. *See Id*. at 650–53. Student-

16  on-student sexual harassment rises to the level of actionable Title IX discrimination

17  only if the harassment is "sufficiently severe." *Id*. at 650. The plaintiff must

18  establish not only that the institution was deliberately indifferent to known acts of

19  harassment, but also that the known harassment was "so severe, pervasive, and

20  objectively offensive that it denie[d] its victims the equal access to education that

21  Title IX is designed to protect." *Id*. at 651–52. The Court imposed this high standard

22  to guard against the imposition of "sweeping liability." *Id.* at 652.

23       The Ninth Circuit has interpreted the holding of *Davis* to set forth a five-part

24  test for determining whether an institution has violated Title IX. *Reese v. Jefferson*

25  *Institution Dist. No. 14J*, 208 F.3d 736, 739 (9th Cir. 2000). First, an institution's

26  liability is limited "to circumstances wherein the recipient exercises substantial

27  control over both the harasser and the context in which the known harassment

28  occurs." *Id*., quoting *Davis,* 526 U.S. at 645. Second, the survivor must have

12

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1  suffered harassment "so severe, pervasive, and objectively offensive that it can be

2  said to deprive the victims of access to the educational opportunities or benefits

3  provided by the school." *Id.*, quoting *Davis,* 526 U.S. at 650. Third, the institution

4  must have had "actual knowledge" of the harassment. *Id.* Fourth, the institution

5  must have acted with "deliberate indifference" to the known harassment. *Id.*,

6  quoting *Davis,* 526 U.S. at 645. Fifth, this deliberate indifference must "cause

7  students to undergo harassment or make them liable or vulnerable to it." *Id.*, quoting

8  *Davis,* 526 U.S. at 645.

9        Applying this standard to the First Amended Complaint, the Complaint must

10  be dismissed because Plaintiff has not alleged conduct by the Regents which rises to

11  the level of deliberate indifference.

12              **a.    <u>The Regents did not act with deliberate indifference</u>**

13        An educational institution acts with deliberate indifference only where its

14  response to harassment "is clearly unreasonable in light of the known

15  circumstances." *Davis, supra,* 526 U.S. at 648. This is "not a mere 'reasonableness'

16  standard," but a heightened standard which requires a plaintiff to show the

17  defendant's conduct was "clearly unreasonable." *Id.* at 649. The deliberate

18  indifference standard is an "exacting standard." *Doe v. School Board of Broward*

19  *County, Fla.* 604 F.3d 1248, 1259 (11th Cir. 2010); *Garcia ex rel. Marin v. Clovis*

20  *Unified Sch. Dist.*, 627 F.Supp.2d 1187, 1196 (E.D. Cal. 2009) ("'Deliberate

21  indifference' is a high standard and requires conduct that is beyond mere

22  negligence."). A school is not deliberately indifferent simply because the response

23  did not remedy the harassment or because the school did not utilize a particular

24  discipline. See *Escue v. Northern Okla. College*, 450 F.3d 1146, 1155 (10th Cir.

25  2006); *Williams v. Paint Valley Local Sch. Dist*., 400 F.3d 360, 367 (6th Cir. 2005);

26  *Baynard v. Malone*, 268 F.3d 228, 236 (4th Cir.2001); *Wills v. Brown Univ*., 184

27  F.3d 20, 26 (1st Cir.1999).

28        To satisfy this standard, a plaintiff must plead facts to support a finding "that

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1    the College made 'an official decision…not to remedy the violation.'" *Oden, supra,*

2    440 F.3d at 1089, quoting *Gebser, supra,* 524 U.S. at 290; see also *Doe v. Dallas*

3    *Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998) ("Actions and decisions by

4    official that are merely inept, erroneous, ineffective, or negligent do not amount to

5    deliberate indifference."). District courts can identify an institution's "response as

6    not 'clearly unreasonable' as a matter of law" and dispose of the claim on a motion

7    to dismiss. *Davis,* 526 U.S. at 649.

8         The word "indifferent" refers to a "lack of interest in or concern about

9    something; apathy." Black's Law Dictionary at 842. In *Schaefer v. Las Cruces*

10   *Public School District,* 716 F.Supp.2d 1052, 1081 (D. N. Mex. 2010), the court

11   explained that where the complaint alleges facts showing the university is "trying to

12   remedy the situation, such facts 'suggest the district was not deliberately indifferent

13   to or tacitly approving of the misconduct.' " (Internal citations omitted.) The

14   *Schaefer* court found that where the facts show there was an orientation meeting to

15   generally discuss bullying (the harassment at issue in that case), and a follow up

16   boys-only meeting after one report of bullying, such actions were not "clearly

17   unreasonable," and therefore did not demonstrate deliberate indifference.

18        Similarly, the Eastern District of California found there was not deliberate

19   indifference where the school offered to remove plaintiff from the class she had with

20   her alleged harasser. *Garcia ex rel. Marin v. Clovis Unified School Dist*., 627

21   F.Supp.2d 1187, 1197-98 (E.D. Cal. 2009). And, in *Oden, supra,* the Ninth Circuit

22   held a nine-month delay in convening a hearing on the Title IX plaintiff's sexual

23   harassment allegations was insufficient to create a triable issue of fact on deliberate

24   indifference, even where such a delay was contrary to school policy. *Oden, supra,*

25   440 F.3d at 1089. This is because conduct that is merely "negligent, lazy, or

26   careless," cannot be the basis of Title IX liability. *Id.*

27        By contrast, courts finding a university's response to reported sexual

28   harassment to be deliberately indifferent have done so only under facts far more

egregious than the present case. For instance, in *Williams v. Board of Regents of the Univ. System of Georgia*, 477 F.3d 1282, 1296 (11th Cir. 2007), the court found the allegations were sufficient to withstand a motion to dismiss where the university allegedly had knowledge of an athlete's prior sexual misconduct, but nevertheless recruited him to attend the school through a special admissions process, then failed to ensure he was informed of the sexual harassment policy and failed to supervise him, which caused the plaintiff to suffer a sexual assault. Similarly, in *Hill v. Cundiff*, 797 F.3d 948 (11th Cir. 2015), the court found there were allegations of deliberate indifference sufficient to withstand a motion to dismiss where the school district effectively used the plaintiff as bait to catch another student who had been accused of sexual assault.

Here, the facts alleged in the First Amended Complaint cannot support a finding of deliberate indifference. The Regents' response to Plaintiff's reported sexual assault is not clearly unreasonable in light of the known circumstances. The Regents' response, as alleged in the Complaint, included providing Plaintiff with multiple counselors and a CARE advocate, assisting her with the criminal report, and advising her on how to rearrange courses and remain on financial aid and housing. These actions all occurred within weeks, if not days, of the report. The University also advised Plaintiff of the process outlined in the school's disciplinary policies. The existence of these policies to address sexual harassment and assault demonstrate the University was not deliberately indifferent. Moreover, the University cannot be held liable for any delays or frustration Plaintiff faced as a result of the criminal process initiated by Plaintiff's report to the police; the District Attorney's decision of whether to prosecute or not is wholly independent of the University.

Additionally, the timing of the allegations demonstrates why this motion must be granted. The totality of the allegations in the First Amended Complaint range from an unspecified date in October 2014 through an unspecified date in January

15

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

2015. A three-month delay in a Title IX investigation is not clearly unreasonable in light of the known circumstances. See *Oden, supra* (holding nine month delay not unreasonable). This is especially true when the "known circumstances," as alleged in the First Amended Complaint, included a pending criminal investigation, and Plaintiff's statement that she did not wish to file a Title IX report.

The allegations in the First Amended Complaint simply do not rise to the level of deliberate indifference. What Plaintiff is effectively seeking is a court determination that the Regents should have placed John Doe on immediate suspension, which would have been the only way to prevent the alleged run-in described in paragraph 73. However, the failure to utilize a particular type of discipline, such as an interim suspension, does not demonstrate deliberate indifference. *Williams,* 400 F.3d at 367; *Baynard,* 268 F.3d at 236; *Wills,* 184 F.3d at 26. Instead, the allegations must affirmatively show the University's actions were clearly unreasonable. Plaintiff has not met this stringent standard.

There are no allegations the Regents had any prior knowledge of sexual misconduct on the part of John Doe, that the Regents' actions placed Plaintiff in a position to suffer the assault, or even that the Regents acted negligently or carelessly. To the contrary, the allegations show the Regents responded to Plaintiff's report by providing her with access to resources available to survivors of sexual assault including counseling services, offering housing and academic accomodations, and helping with the criminal investigation immediately upon learning of the assault. These actions are not clearly unreasonable, and thus cannot support a finding of discrimination under Title IX.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss Plaintiff's First Amended Complaint. Dismissal with prejudice is appropriate here, because Plaintiff can plead no set of facts establishing a plausible entitlement to relief on any of her claims. *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011)

16

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1   ("[A] district court may dismiss without leave where a plaintiff's proposed

2   amendments would fail to cure the pleading deficiencies and amendment would be

3   futile.").

4

5   Dated: March 4, 2016                    NYE, PEABODY, STIRLING, HALE &
                                            MILLER, LLP
6
                                    By:  ___/S/_____
7                                        Jonathan D. Miller, Esq.
                                         Alison M. Bernal, Esq.
8                                        Attorney for Defendant, REGENTS OF
                                         THE UNIVERSITY OF CALIFORNIA
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO DISMISS FIRST                    Case No. 3:15-CV-05779-RS
AMENDED COMPLAINT

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA  93101