UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAYLEY MOORE,<br><br>    Plaintiff,<br><br>    v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>    Defendant. | Case No. 15-cv-05779-RS<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND** |

## I. INTRODUCTION

Plaintiff Hayley Moore contends she was a victim of sexual assault while enrolled as a student at the University of California, Santa Barbara ("UCSB"). She alleges that the university responded with deliberate indifference when she reported her assault to school officials. She brings suit against The Regents of the University of California ("Regents" or "university") seeking to hold the university liable for gender discrimination in violation of 20 U.S.C. § 1681 *et seq.* ("Title IX"). The university moved to dismiss Moore's first amended complaint ("FAC") on the basis that Moore failed to plead adequately deliberate indifference based on the university's pre- or post-assault conduct. On May 23, 2016, the Court granted that motion with leave to amend and Moore subsequently filed a second amended complaint ("SAC"). The Regents move to dismiss on the ground that Moore still fails to plead adequately deliberate indifference. For the reasons explained below, the motion to dismiss based on the university's post-assault conduct is granted with leave to amend. The motion to dismiss based on the university's pre-assault conduct is granted without leave to amend. This matter was submitted without oral argument, pursuant to Civil Local Rule 7-1(b).

## II. FACTUAL BACKGROUND[1]

The allegations of the FAC are described in great detail in the May 23, 2016 order dismissing the FAC ("prior order" or "Order") and, to the extent they are essentially repeated in the SAC, they are not repeated here. This section focuses on the SAC's new allegations.

In the SAC, Moore expands upon her interaction with University of California Police Department ("UCPD") detective Mitch Molitor on the day after the assault. She previously alleged that soon after her cousin contacted the police, Molitor arrived at her dorm and took her to the police station where he proceeded to take her statement. Now, she adds that Molitor specifically discouraged her from going to the hospital to get a rape kit test, and that she followed his advice. She avers that when she told Molitor she was especially upset because, prior to the assault, she was a virgin, he expressed skepticism because she was not experiencing much more severe pain.

Additionally, Moore expands upon her conversation with Joe O'Brien, UCSB's Assistant Dean and Director of Advising. Previously, Moore alleged O'Brien confirmed that if she reduced her course load she would be ineligible for financial aid and on-campus housing, but he informed her of the availability of an appeal process that would allow her to stay in the dorms and maintain her financial aid despite dropping to part-time student status. Moore now alleges O'Brien told her that, in order to appeal for continued student housing and financial aid as a part-time student, she would have to "personally go to" the student housing board and the financial aid office and discuss her assault with administrators. SAC ¶ 62. Moore asked if O'Brien or some other school official could make the appeals on her behalf, given her discomfort with discussing the details of her assault. O'Brien said no. Moore's father subsequently called O'Brien to express his outrage that Moore would need to discuss her assault with additional administrators in order to receive the

---

[1] The factual background is based on the averments in the complaint, which must be taken as true for purposes of a motion to dismiss. Additionally, the parties request judicial notice of three of the same documents that were noticed in the prior order. *See* Def.'s Request for Judicial Notice ("RJN") Exs. 1-2; Pl.'s RJN Ex. A. The requests are denied as redundant.

requested accommodations. He requested a call back, but O'Brien did not return the call. Moore also discussed her inability to complete the appeal process in her second meeting with Olson, but Olson just reiterated her suggestion that Moore withdraw from classes.

Moore also newly alleges that, at some unspecified point in time, she met with Santa Barbara Police Department ("SBPD") Detective Minter and Crutcher to express her desire to have both SBPD and UCSB independently investigate her case. They responded that "it would be a long, drawn-out process that would ultimately likely not resolve in her favor because it was a 'he-said she-said' situation" and that the process would likely negatively impact her grades. SAC ¶ 50. They also stated that pursuing a UCSB investigation "would negatively affect any criminal investigation and may even sabotage it altogether." *Id.* In the SAC, Moore newly avers she never rescinded her request to move forward with both investigations. In fact, she avers she reiterated the request in her second meeting with Olson. Moore previously alleged, however, that she eventually "indicated that she did not want an [UCSB] investigation, after she was heavily discouraged by UCSB administrators from pursuing one." FAC ¶ 72; Complaint ¶ 44.

Further, while Moore had previously alleged seeing Doe on campus one time after the assault, she now alleges reporting that encounter to Crutcher. She reported to Crutcher that the encounter induced a panic attack and that she feared running into Doe again. In response, Crutcher offered counseling.

Finally, Moore now avers UCSB engaged in a practice of discouraging victims of sexual assault from pursuing Title IX investigations and delaying those investigations that victims did choose to pursue. In March 2014, Jane Roe 1 reported that she had been sexually assaulted by another UCSB student. She met with UCSB's Judicial Affairs office to request that UCSB investigate her report. In response, Jane Roe 1 was told that investigations take a long time, that her story was not credible, that it was a "he-said, she-said" situation and that the investigation was unlikely to produce results. Jane Roe 1 persisted in her desire to have UCSB investigate and UCSB commenced an investigation in November 2014—eight months after receiving her report. Similarly, in June 2014, Jane Roe 2 was sexually assaulted by another UCSB student. She

1  requested immediate action, but UCSB did not commence an investigation until February 2015—
2  approximately eight months after receiving her report.

### III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard asks for "more than a sheer possibility that a defendant acted unlawfully." *Id.* The determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.* at 679.

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may be based either on the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party. *Twombly*, 550 U.S. at 570. "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Iqbal*, 556 U.S. at 678 ("threadbare recitals of the elements of the claim for relief, supported by mere conclusory statements," are not taken as true).

### IV. DISCUSSION

Moore continues to assert a single claim for a violation of Title IX based on the university's actions both prior to and following her alleged sexual assault. As explained in the

prior order, a university can be held liable for violating Title IX in connection with peer-on-peer harassment only in "limited circumstances," where five requirements are met. *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 643 (1999). First, a school is liable "only for its own misconduct," *id.* at 640, so the institution must "exercise[] substantial control over both the harasser and the context in which the known harassment occurs." *Id.* at 645. Second, the survivor must have suffered harassment "so severe, pervasive, and objectively offensive that it can be said to deprive the victim[] of access to the educational opportunities or benefits provided by the school." *Id.* at 650. Third, the institution must have had "actual knowledge" of the harassment. *Id.* at 650. Fourth, the institution must have acted with "deliberate indifference" to the known harassment. *Id.* at 651. Fifth, this deliberate indifference must "cause students to undergo harassment or make them liable or vulnerable to it." *Id.* at 645. The Regents assert that Moore has still not pleaded adequately "deliberate indifference."

### A. Preliminary Issue

As a preliminary matter, the Regents take issue with Plaintiff's heavy reliance on guidance documents from the Department of Education ("DOE"). The prior order noted that there is no private right of action to recover damages under Title IX for violations of DOE administrative requirements, much less provisions of DOE guidance documents, like the DOE's April 4, 2011 Dear Colleague Letter ("DCL") or its Questions and Answers ("Q&As") documents. Moore asks for reconsideration and suggests reliance on these documents "as a frame of reference." Opp. at 9. The SAC, however, continues to rely on these documents to establish Title IX liability. *See, e.g.*, SAC ¶ 84 ("Defendant violated the standards set forth by the DCL, Questions and Answers, and Defendant's own policies."); *id.* ¶ 94 ("Defendant Trustees acted with deliberate indifference in deviating significantly from the standard of care outlined by the DOE in the DCL of 2011."). As previously explained, an institution's "alleged failure to comply with the regulations . . . does not establish [] deliberate indifference" and "does not itself constitute discrimination in violation of Title IX." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 291-92 (1998); *see also* DCL at 1 n.1 (significant guidance documents—like the DCL—"do[] not add requirements to applicable

law"). There is no reason to depart from the prior ruling on this issue. Accordingly, in deciding if Moore adequately has pleaded deliberate indifference, *Davis* and its progeny—not the DCL or Q&As—must govern. *See Karasek v. Regents of the Univ. of Cal.*, No. 15-cv-03717-WHO, 2015 WL 8527338, at *13–14 (N.D. Cal. Dec. 11, 2015). Adherence to the DCL might be good policy, but failure to adhere, standing alone, does not constitute deliberate indifference.

### B. Deliberate Indifference

Institutions "are deemed 'deliberately indifferent' to acts of student-on-student harassment only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648. Institutions are not required to "purg[e] their school[] of actionable peer harassment," nor do "victims of peer harassment . . . have a Title IX right to make particular remedial demands." *Id*. Instead, the standard is akin to "an official decision by the [institution] not to remedy the violation." *Gebser*, 524 U.S. at 290. This is an "exacting standard," *Lopez v. Regents of Univ. of California*, 5 F. Supp. 3d 1106, 1122 (N.D. Cal. 2013) (internal quotation marks omitted), that requires a showing of a response that was more deficient than merely "negligent, lazy, or careless." *Oden v. N. Marianas Coll.*, 440 F.3d 1085, 1089 (9th Cir. 2006).

#### 1. Post-Assault Conduct

Moore contends Defendant acted with "deliberate indifference" to her report of sexual assault because the university failed to investigate her report, discouraged her from pursuing a school investigation, failed to offer reasonable accommodations, and failed to take remedial action in response to Plaintiff's encounter with Doe.

##### a. UCSB Investigation

Principally, Moore argues the university deliberately was indifferent because it failed to investigate her reported assault. Moore alleges she "expressed her desire to Minter and Crutcher to have both SBPD and UCSB each independently investigate" her report and she "again expressed her desire to Olson that UCSB conduct an investigation." SAC ¶ 50, 66. She now avers she never rescinded her request to move forward with the UCSB investigation. *Id*. In the FAC

and the original complaint, however, Moore alleged that she eventually "indicated that she did not want an [UCSB] investigation." FAC ¶ 72; Complaint ¶ 44. This statement "serve[s] as a judicial admission." *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 859 (9th Cir. 1995). Where the party making an ostensible judicial admission explains the error in a subsequent pleading or by amendment, the court must accord the explanation "due weight." *Id*. at 859–60. Moore, however, has failed to provide a clear explanation for this error. Instead, Moore argues the term "rescind" is irrelevant, emphasizing instead the reason that she rescinded the request. Opp. 19 n. 7.[2]

Even if Moore had not previously alleged that she rescinded her request for a school investigation, the mere allegation that Moore "expressed her desire" for a school investigation is vague. In the cases on which Moore relies, the plaintiffs made formal requests for school action. *See, e.g.*, *Kelly v. Yale Univ.*, No. 3:01-CV-1591, 2003 WL 1563424, at *1 (D. Conn. Mar. 26, 2003) (plaintiff "filed a formal written complaint" with the Yale Divinity School Sexual Harassment Committee); *Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282, 1289 (11th Cir. 2007) (plaintiff "fil[ed] her complaint" with university police). Moore does not allege whether Crutcher or Olson or any other school administrator ever discussed with her the process for formally initiating a school investigation or any grievance procedure, or whether she ever took any affirmative steps to file a formal request and, if so, when or how. Moreover, Moore does not allege whether she requested that the school continue its investigation after withdrawing, or whether she ever communicated with school officials about the progress of the investigation after she withdrew. These are not facts for which discovery is needed to shed light; Moore is fully in control of this information. These allegations matter because Moore withdrew from the university three months after her assault and even a nine-month investigative delay has been found to be no

---

[2] Because of the lack of clarity surrounding Moore's request for an investigation and subsequent retraction thereof, the question of whether any such request—if not rescinded—might have been privileged need not be reached. (Mot. 22-24.) Accordingly, the Regents' related request for judicial notice of the privacy policies in effect during the relevant time period is denied. *See* Def.'s RJN, Ex. 3.

more than "negligent, lazy, or careless" in certain circumstances. *See Oden*, 440 F.3d at 1089.[3] At bottom, given the ambiguity that surrounds Moore's request for an investigation, she has not pleaded delay or inaction that is "clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648.

Relatedly, Moore avers that Minter and Crutcher discouraged her from requesting a school investigation.[4] As an initial matter, Minter is not a university employee; he is a detective employed by the Santa Barbara Police Department or the Santa Barbara County Sherriff's Office. The SAC does not distinguish between statements made by Minter and those made by Crutcher. Minter's statements cannot be attributed to the university. A school is liable "only for its own misconduct." *Davis*, 526 U.S. at 643. Moreover, as explained in the prior order, even if a school official instructed that a school investigation "would likely interfere with" the criminal investigation and even if that statement was wrong, such a mistake does not rise above negligence.

### b. Accommodation

Moore argues the university deliberately was indifferent because it failed to provide her with accommodations related to her course load and housing following the assault. Moore avers she expressed to several administrators her concern that dropping units could jeopardize her financial aid and campus housing. In the SAC, Moore clarifies that O'Brien told her she could appeal to keep her financial aid and campus housing, but she would have had to "personally go to" each office and discuss her situation with relevant administrators. SAC ¶ 62. In response, Moore expressed her reluctance to discuss the assault and asked if O'Brien or some other administrator could conduct the appeals on her behalf. He said no.

Moore again relies on *Kelly v. Yale University*, No. 3:01-cv-1591, 2003 WL 1563424 (D.

---

[3] Moore argues that the university was obligated to proceed with an investigation "even if she did rescind her request." Opp. 19-20. She cites no case law in support. She points only to the DCL. As discussed above, the DCL is not controlling. *See* Section IV.A, *supra*.

[4] Moore also alleges in a conclusory fashion that Molitor "specifically discouraged" her from going to the hospital to get a rape kit (SAC ¶ 48), but does not allege how Molitor did so.

Conn. Mar. 26, 2003). There, the plaintiff was assaulted by a student with whom she shared a class and a dormitory. She filed a formal written complaint with the Yale Divinity School Sexual Harassment Committee and requested that the assailant be removed from their shared class. Throughout the grievance process, she also repeatedly requested alternative housing because she did not feel safe living in the same dormitory as her assailant. The court found a reasonable jury could find the school's failure to provide accommodations, either academic or residential, immediately following the assault, was clearly unreasonable. *Id*. at *4.

Unlike *Kelly*, Moore's requests for accommodations were separate from her concerns about a hostile environment. Moore does not allege she sought academic or residential accommodations to avoid encounters with Doe. Moreover, as noted in the prior order, unlike *Kelly*, Moore's requests were not simply ignored. Within days of the incident, Moore met with the university police, her CARE advocate, the Assistance Coordinator of Student Mental Health Services at UCSB, the Assistant Clinical Director and Crisis and Administrative Services Coordinator, and the Assistant Dean and Director of Advising at UCSB. Moore received counseling from UCSB and the university informed her of a process through which she could keep her financial aid and housing if she dropped units. O'Brien's refusal to conduct Moore's appeals on her behalf appears "negligent, lazy, or careless" but, as presently pleaded, does not evince conduct plainly unreasonable in light of the known circumstances.

### c. Remediation

Moore contends Doe's unrestricted presence on campus created a hostile environment, which the university failed to remediate. She encountered Doe on campus one time and reported the encounter to Crutcher. She further reported suffering a panic attack and feeling fearful of encountering Doe in the future. Crutcher offered counseling, but did not offer other remedial measures. Moore, for her part, did not make any remedial demands.

Moore relies on *Doe ex rel. Doe v. Derby Bd. of Educ.*, 451 F. Supp. 2d 438 (D. Conn. 2006), where the plaintiff was a middle-school student who had been sexually assaulted by a high-school student during summer break. *Id*. at 444. The plaintiff and her assailant attended school in

the same building "leaving open the constant potential for interactions between them." *Id.* at 444. The plaintiff, in fact, frequently did see her assailant during the school year and the assailant's friends harassed her on several occasions. *Id.* The court found a triable issue of deliberate indifference where the school made no efforts to reduce plaintiff's "vulnerability to traumatic interactions with her attacker" because of the plaintiff's "youth, and her proximity to [the assailant] at school." *Id.* at 448.

Unlike *Derby* or *Kelly*, Moore does not aver that any encounter with her assailant was likely or imminent. Nor does Moore aver that the school ignored or rebuffed any request for remedial action to eliminate a hostile environment. She did not demand, for example, a no-contact order or the assailant's removal from campus. Further, Moore fails to allege when she encountered Doe or reported the encounter to Crutcher. It is thus unclear whether the encounter occurred proximately to her decision to withdraw from school or her decision, if any, to rescind her request for a school investigation. Again, the university's alleged failure to offer remedial measures may have been negligent, but it does not rise to the standard of "clearly unreasonable" as the pleadings now stand.

### 2. Pre-Assault Conduct

In the FAC, Moore failed to state a claim against the university based on its pre-assault response to the general problem of sexual violence on campus. Order at 13-15. Moore's general allegations regarding the university's inadequate response to sexual violence, and the complaints and protests allegedly responsible for the adoption of new sexual assault policies, were insufficient in the FAC to support a finding of deliberate indifference to known harassment. In the FAC, Moore did not allege the university had any specific knowledge of a heightened risk of sexual assault either by John Doe or in the particular context in which Moore's assault occurred, differentiating her case from *Williams v. Board of Regents of the Univ. System of Georgia*, 477 F.3d 1282, 1296 (11th Cir. 2007) and *Simpson v. University of Colorado Boulder*, 500 F.3d 1170, 1181–85 (10th Cir. 2007).

In the SAC, Moore avers UCSB maintained a pattern and practice of discouraging victims

of sexual assault from pursuing formal investigations by the university. She alleges the university waited eight months to investigate the peer-to-peer sexual assaults reported by Jane Roe 1 and 2 in 2014, and that it discouraged both victims from pursuing school investigations. Moore does not allege, however, that the university had any specific knowledge of a heightened risk of sexual assault by the assailants or in the particular contexts in which the assaults occurred in the cases of Jane Roe 1 and 2.

Moore argues that she is not required to allege such knowledge because her allegation is based on a school policy. She relies on *Mansourian v. Regents of Univ. of California*, 602 F.3d 957, 967–68 (9th Cir. 2010). There, female wrestlers sued their university because it eliminated all women from the wrestling team and then, in response to student protests, instituted an official policy permitting women to participate on the team if they could beat male wrestlers in their weight class using men's collegiate wrestling rules. As a result of the new requirement, female students were unable to participate on the team. The Ninth Circuit found the plaintiffs were not required to give the university notice of the alleged Title IX violation before filing suit. The court held that actual knowledge of discrimination is required when the alleged Title IX violation consists of an institution's deliberate indifference only in cases that "do not involve official policy." *Id*. at 967 (citing *Gebser*, 524 U.S. at 290). In other words, no notice requirement is applicable to Title IX claims that rest on "an affirmative institutional decision." *Id*. at 967. The Ninth Circuit reasoned that a university's decision with respect to athletics is easily attributable to the university and "always—by definition—intentional." *Id*. at 968 (citing *Jackson v. Birmingham Board of Education*, 544 U.S. 167, 183 (2005)).

Here, Moore does not allege an affirmative institutional decision or official school policy of UCSB. Rather, she points to two incidents that she asserts show a "pattern or practice" of discouraging victims of sexual assault from pursuing formal investigations by the university. Moore does not allege that Jane Roe 1 and 2 even interacted with the same UCSB administrator or office as she did. In fact, Jane Roe 1 spoke with someone in the UCSB Judicial Affairs office, while Moore and Jane Roe 2 did not. Even crediting Moore's allegation of a "pattern and

practice" of discouraging victims from pursuing formal school investigations, Moore has not alleged any official policy, which can be "easily attributable to the university" and "always—by definition—intentional."

To the extent Moore's claim is based on the school's pre-assault conduct, the motion to dismiss will be granted without leave to amend. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad.") (internal quotation marks omitted).

## V. CONCLUSION

Moore has still not pleaded adequately deliberate indifference based on the university's pre- or post-assault conduct. To the extent Moore's claim is based on the school's pre-assault conduct, the motion to dismiss will be granted without leave to amend. To the extent Moore's claim is based on the school's post-assault conduct, she will be given one final opportunity to amend if she can do so in good faith, consistent with the principles set forth above. It Moore elects to amend her pleading, she must lodge an amended complaint within twenty (20) days from the date of this order.

**IT IS SO ORDERED**.

Dated: September 15, 2016

_____
RICHARD SEEBORG
United States District Judge